## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

RICHARD FOSTER,
ADC #168964                                                                 PLAINTIFF

V.                                     No. 4:17CV00748-JM-JTR

GARY ANDREWS, Lieutenant,
Faulkner County Jail Unit 1;
RUSTY PAGE, Sergeant,
Faulkner County Jail Unit 1;
CHRISTOPHER RIEDMUELLER,
Captain/Jail Administrator,
Faulkner County Jail Unit 2; and
TIM RYALS, Sheriff, Faulkner County Jail                DEFENDANTS

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent
to United States District Judge James M. Moody, Jr.  You may file written objections
to all or part of this Recommendation. If you do so, those objections must: (1)
specifically explain the factual and/or legal basis for your objection; and (2) be
received by the Clerk of this Court within fourteen (14) days of this
Recommendation. If you do not file objections, Judge Moody can adopt this
Recommendation without independently reviewing all of the evidence in the record.
By not objecting, you may waive the right to appeal questions of fact.

## I. Introduction

Plaintiff Richard Foster ("Foster") filed this § 1983 action alleging that, while he was incarcerated at the Faulkner County Detention Center ("FCDC") between August 2017 and January 2018, Defendants Lieutenant Gary Andrews ("Andrews"), Sergeant Rusty Page ("Page"), Captain/Jail Administrator Christopher Riedmueller ("Riedmueller"), and Sheriff Tim Ryals ("Ryals") subjected him to unconstitutional conditions of confinement by: (1) forcing him to sleep on a floor containing fecal matter, trash and food; and (2) failing to remove "black mold" from the ceiling and walls.[1]  Foster named Defendants in their individual and official capacities, and he seeks monetary and injunctive relief. *Doc. 15*.

Defendants have filed a Motion for Summary Judgment, a Brief in Support, and a Statement of Indisputable Material Facts. *Docs. 29, 30 & 31*. Although notified of his right to file a Response, Foster has not done so.  *See Doc. 32*. Thus, the issues are joined and ready for disposition.

---

[1]Foster filed an initial Complaint and three Amended Complaints, all of which were stricken from the record because they contained multiple unrelated claims. *Docs. 2, 4, 5, 9 & 13*. On February 22, 2018, he filed a Substituted Complaint, as directed by the Court. *Doc. 15*.

On April 9, 2018, the Court: (1) dismissed all claims against Major John Randell; (2) dismissed Foster's claim that he lived in a cell with a broken call button and exposed wires for ten days; and (3) dismissed Foster's due process and access to the courts claims against Page. *Docs. 17 & 18*. Thus, these two inhumane conditions of confinement claims against Andrews, Page, Riedmueller and Ryals are the only claims remaining in the case.

## II. Facts

Before addressing the merits of Defendants' Motion for Summary Judgment,[2] the Court will summarize the relevant facts, all of which are undisputed.[3]

1.      On August 26, 2017, Foster was booked into the FCDC. *Doc. 31, Ex. A-1 at 2* (Arrest/Booking).

2.      On October 16, 2017, at approximately 6:50 p.m., the sprinklers began going off in Cell 307, where Foster and other detainees were housed. Officers were unable to turn off the sprinklers. After about eight minutes, non-party officers removed the detainees from the cell and placed them in the recreation yard. Officers turned off the water to the sprinklers, then swept the standing water into the drains and out into the recreation yard. After most of the water was gone, Foster and the

---

[2]Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 249-50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex,* 477 U.S. at 323. Thereafter, the nonmoving party must present specific facts demonstrating that there is a material dispute for trial. *See* Fed R. Civ. P. 56(c); *Torgerson v. City of Rochester,* 643 F.3d 1031, 1042 (8th Cir. 2011).

[3]Foster did not respond to Defendants' Motion for Summary Judgment or otherwise contest anything in Defendants' Statement of Indisputable Material Facts (*Doc. 31*). Accordingly, all of those facts, which form the basis for their Motion for Summary Judgment, are now deemed to be undisputed. *See* Fed. R. Civ. P. 56(e) ("If a party … fails to properly address another party's assertion of fact as required by Rule 56(c), the court may … consider the fact undisputed for purposes of the motion."); *Jackson v. Ark. Dep't of Educ. Vocational & Technical Div.*, 272 F.3d 1020, 1027 (8th Cir. 2001) (citing Local Rule 56.1(c) in concluding that the plaintiff "forfeited her ability to contest the facts presented" by defendant by failing to respond to defendant's summary judgment motion).

other detainees were brought back to the cell. They were given cleaning supplies to clean up any remaining water and mess. *Doc. 31, Ex. A-5 at 2 (*Incident Reports) & *Ex. B ¶¶ 2 & 4* (Page Aff.).

3.      On November 26, 2017, Foster filed a grievance stating that, as a result of "black mold," he was having "serious stomach problems" and "chest pains." *Doc. 4 at 6.* On November 28, 2017, Defendant Page responded to the grievance, telling Foster to submit a medical grievance. Page also stated: "There is no black mold in this facility. We have had it tested." *Id.*

4.      On December 19, 2017, Foster completed a Health Services Request Form, stating that he was experiencing "serious breathing problems" due to "sleeping on the floor next to the vents with black mold." He said his chest hurt when he tried to take deep breaths, and he was vomiting and feeling sick to his stomach. *Doc. 31, Ex. A-4 at 2 (*Medical Requests). It is noted on the form: "Approved to see Jail MD this week for f/u on hand xrays."[4] *Id.* The form bears a "received" stamp of December 20, 2017 by "Medical/Dental Services Admin." *Id.*

5.      On December 22, 2017, Foster filed a grievance, which read:

> There is black mold in the vents along with the showers and toilets also there is an infestation of bugs and roaches in Cell 306 and we do not get cleaning supplies daily like we should. This is a filthy very unsanitary living condition I am forced to live in along with other inmates. It is overcrowded. I'm still forced to sleep on the floor by the vents and showers where the mold is worst. I have been to the doctor

---

[4]This notation appears to have been made by nonparty medical personnel.

for the vomiting along with breathing problem this is causing and nothing has been done nor has any treatment been rendered. Also the fact of the matter is I've grieved and complained about the situation to several officers as well as the Sgt. and Lt. and the matter has gotten worse now we barely get cleaning supplies once a week. So let it be duly noted I have exhausted my efforts in this matter.

*Doc. 31, Ex. A-2 at 2* (Requests/Grievances). Defendant Page responded the same day, stating: "Thank you for the information sir." *Id.*

6.    On January 16, 2018, Foster was released from the FCDC to the Arkansas Department of Correction ("ADC"). *Doc. 31, Ex. A-1 at 2.* Thus, he was incarcerated at the FCDC for 143 days.

7.    During the relevant time period, all inmates were provided: (a) sleeping mats, whether sleeping on the floor or on a bunk; and (b) daily access to cleaning supplies, such as mops, brooms, soap and liquid cleaning agents, which could be used to clean their cells, the shower, and the common areas. *Doc. 31, Ex. A ¶¶ 5-7 & 9* (Riedmueller Aff.).

8.    The FCDC showers are: (a) cleaned "regularly" by FCDC staff; (b) cleaned "daily" by inmate "trustees"; and (c) power-washed weekly. *Id. ¶¶ 7 & 9, & Ex. A-6 at 25* (FCDC Policies and Procedures).

9.    The FCDC has been inspected twice by the Arkansas Criminal Detention Facilities Review Committee, and no mold was found either time. *Doc. 31, Ex. A ¶ 8* (Riedmueller Aff.).

10.    The FCDC's written policy is to provide "a clean and healthful

environment" for detainees. *Id. ¶ 23, & Ex. A-6 at 25* (FCDC Policies & Procedures).

11.    FCDC policy also provides: (a) "[f]loors shall be swept and mopped daily or more often if necessary"; (b) "[l]itter shall not be permitted to accumulate on floors, in corridors, rooms, or anywhere in the detention facility"; and (c) soap, disinfectants, brooms, mops and other necessary cleaning supplies shall be provided upon request. *Doc. 31, Ex. A-6 at 25.*

12.    Although "trustees" and "volunteer detainees" are given work assignments to maintain sanitary conditions at the FCDC, *all detainees* are required to keep their quarters "clean and in proper order," and "are expected to participate in cleaning their own cell areas." *Id. at 25-26.*

13.    Defendant Riedmueller is the FCDC jail administrator. He is a supervisor and is not directly involved with day to day tasks at the FCDC. *Doc. 31, Ex. A ¶¶ 1 & 4* (Riedmueller Aff.).

14.    Andrews is a supervisor at the FCDC. He is not directly involved with day to day tasks at the FCDC. *Id. ¶ 4.*

15.    Page is a detention officer at the FCDC. *Doc. 31, Ex. B ¶ 1* (Page Aff.).

## III. Discussion

### A.    Official Capacity Claims

As a matter of law, the "official capacity" claims that Foster has asserted against Defendants must be construed as claims against their employer, Faulkner

County. *See Parrish v. Ball*, 594 F.3d 993, 997 (8th Cir. 2010); *Jenkins v. County of Hennepin, Minnesota*, 557 F.3d 628, 631-32 (8th Cir. 2009). Faulkner County cannot be held vicariously liable, in a § 1983 action, for the acts of its employees. *See Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 691-94 (1978). Instead, it can only be held liable if an official county policy or widespread custom was the "moving force" behind the alleged constitutional violation. *See Luckert v. Dodge County*, 684 F.3d 808, 820 (8th Cir. 2012); *Jenkins*, 557 F.3d at 633.

Because Foster does not allege or provide evidence that a Faulkner County policy or custom caused his injury, Defendants are entitled to summary judgment on those claims.

## B.    Individual Capacity Claims

Defendants argue that, because Foster has failed to present any evidence demonstrating that his constitutional rights were violated, they also are entitled to summary judgment on his claims for damages against them in their individual capacity.[5]

The "Constitution does not mandate comfortable prisons" or that prisons be "free of discomfort." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). Thus, to

---

[5]Because Foster is no longer incarcerated at the FCDC, his request for injunctive relief is moot. *Zajrael v. Harmon*, 677 F.3d 353, 355 (8th Cir. 2012) (holding that a prisoner's request for injunctive relief is rendered moot when he is transferred to another facility and is no longer subject to the allegedly unconstitutional conditions).

proceed to trial on his inhumane conditions of confinement claim, Foster must come forward with evidence demonstrating that: (1) objectively, he suffered a deprivation that was "sufficiently serious" enough to deny him "the minimal civilized measure of life's necessities," or to pose "a substantial risk of serious harm" to his health or safety; and (2) subjectively, Defendants were deliberately indifferent to the risk of harm posed by the deprivation.[6] *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).   In this respect, deliberate indifference, which is a higher standard than mere negligence, is defined as a "reckless disregard of the known risk." *Holden v. Hirner*, 663 F.3d 336, 341 (8th Cir. 2011); *Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011).

In his Substituted Complaint, Foster alleges that, from August 2017 to January 2018, he slept on an "extremely dirty" floor containing "trash and food," and was exposed to "black mold" on the ceiling and walls. *Doc. 15 at 4*. According to Foster, "weeks" would go by without him being allowed any cleaning supplies. *Id.* He alleges that, on October 16, 2017, "the sprinkler was popped" in his cell, flooding the floor (where he was sleeping) with fecal matter and water. *Id.* Foster alleges that his exposure to these conditions, over a five-month period, caused him to become physically ill "on numerous occasions." *Id.*

---

[6]According to Foster, he was a pretrial detainee until December 14, 2017, when he became a convicted prisoner awaiting transport to the ADC. *Doc. 15 at 3-4.* The Eighth Circuit applies the same standard to inhumane conditions of confinement claims whether brought by pretrial detainees, under the Fourteenth Amendment, or by convicted prisoners, under the Eighth Amendment. *Davis v. Oregon County*, 607 F.3d 543, 548 (8th Cir. 2010).

Requiring a prisoner to sleep on a mattress on the floor is not *per se* unconstitutional. *Ferguson v. Cape Girardeau County,* 88 F.3d 647, 650 (8th Cir. 1996); *A.J. by L.B. v. Kierst,* 56 F.3d 849, 855-56 (8th Cir. 1995); *see also Hubbard v. Taylor,* 538 F.3d 229, 234-35 (3d Cir. 2008) (forcing pretrial detainees to sleep on a floor mattress for three to seven months due to overcrowding is not a constitutional violation); *Sanders v. Kingston*, 53 Fed. Appx. 781, 783 (7th Cir. 2002) ("We know of no case holding that the Eighth Amendment requires elevated beds for prisoners, and [plaintiff] does not cite one."). Instead, consideration must be given to the totality of the circumstances, including the length of time the prisoner slept on a floor mattress, whether he was deprived of other bedding or clothing, and whether he was exposed to extreme temperatures, human waste or unsanitary conditions for a prolonged period. *See Beaulieu v. Ludeman*, 690 F.3d 1017, 1045 (8th Cir. 2012) ("Conditions, such as a filthy cell, may be tolerable for a few days and intolerably cruel for weeks or months."); *Owens v. Scott County Jail*, 328 F.3d 1026, 1026-27 (8th Cir. 2003) (reversing summary judgment for jail officials where detainee slept on a floor mattress next to a toilet for five weeks, urine splashed onto detainee and his bedding, and the bedding was cleaned less than once a month); *Seltzer-Bey v. Delo*, 66 F.3d 961, 963-64 (8th Cir. 1995) (no constitutional violation where inmate was temporarily in a cell without clothing, bedding, or running water, with a concrete slab for a bed, and cold air blowing on him).

The Eighth Circuit has repeatedly held that exposure, *for a limited duration,* to human waste does not rise to the level of a constitutional violation. *See Goldman v. Forbus,* 17 Fed. Appx. 487, 488 (8th Cir. 2001) (no constitutional violation where detainee slept six nights on the floor next to a toilet); *Smith v. Copeland,* 87 F.3d 265, 269 (8th Cir. 1996) (no constitutional violation from detainee's exposure to "raw sewage" from an overflowing toilet for four days). The Eighth Circuit has also acknowledged that whether inmates were provided with cleaning materials is a relevant consideration when evaluating a conditions of confinement claim. *Beaulieu,* 690 F.3d at 1045; *Tokar v. Armontrout*, 97 F.3d 1078, 1082 n.4 (8th Cir. 1996).

It is undisputed that all FCDC prisoners, including Foster, were provided mattresses. He was not denied bedding or clothing, or exposed to extreme temperatures. He admitted, in his grievance, that the detainees were receiving cleaning supplies at least "once a week." FCDC policy reasonably requires detainees to take some responsibility for keeping their cells clean. After the cell floor was flooded with fecal matter and water on October 16, 2017, FCDC officers and trustees immediately removed most of the water, and detainees were provided cleaning supplies to finish the job the same day.

Regarding the black mold, Defendants provide undisputed evidence that two inspections have shown that the FCDC does *not* have black mold. The showers are cleaned daily and power-washed weekly. Foster has offered *no evidence* that what

10

he assumed to be "black mold" was a toxic substance or was the cause of his breathing and stomach problems. *See Stacy v. Rice,* No. 4:17cv153-SWW-BD, 2018 WL 1802560 at *3 (E.D. Ark. Mar. 28, 2018) (stating that "[n]ot all strains of mold are toxic," and "of 100,000 species of mold, most are not dangerous") (*citing* Erin Masson Wirth, *Toxic Mold in Residences and Other Buildings: Liability and Other Issues,* 114 A.L.R. 5th 397, § 2a (2003)).

Finally, the record shows that Foster filed only one medical grievance about health issues allegedly related to conditions in his cell, in December 2017, and, at that time, he was already scheduled to see the jail doctor for another unrelated medical issue. He has come forward with no evidence that his health problems were related in any way to his exposure to unsanitary conditions.

Viewed in light of the undisputed facts and Eighth Circuit case law, Foster's unsupported allegations are insufficient to demonstrate that his temporary exposure to unsanitary and uncomfortable conditions was serious enough to satisfy the objective requirement for a viable Eighth Amendment claim.

Foster also has failed to make the requisite showing that, subjectively, any of the Defendants acted with deliberate indifference to a substantial risk of serious harm to his health or safety. He alleges that he complained to "every defendant named in this complaint," but nothing changed. *Doc. 15 at 4.* He alleges that, in October 2017, he informed Riedmueller about the overcrowding and unsanitary conditions by

speaking with him personally and writing grievances. According to Foster, Riedmueller said he would get back to Foster, but never did. He also alleges that Andrews "knew about all these issues" and that Ryals, as sheriff, was responsible for "the overcrowding" at FCDC. *Id.*

However, Foster has not produced *any evidence* that anyone other than Defendant Page – who responded to his November and December 2017 grievances – was subjectively aware of these alleged conditions. *See Corwin v. City of Independence,* 829 F.3d 695, 699 (8th Cir. 2016) (explaining that deliberate indifference requires subjective knowledge and that a negligent failure to be aware of a potential constitutional violation is insufficient). It is well settled that a supervisor may not be held vicariously liable, in a § 1983 action, for the constitutional violations of a subordinate on a *respondeat superior* theory. *Ashcroft v. Iqbal,* 556 U.S. 662, 676 (2009) (holding that "vicarious liability is inapplicable to … § 1983 suits"); *Saylor v. Nebraska,* 812 F3.3d 637, 644-45 (8th Cir. 2016) (because a supervisor cannot be held vicariously liable for the constitutional violations of a subordinate, prisoner must "show that the supervisor personally participated in or had direct responsibility for the alleged violations" or "that the supervisor actually knew of, and was deliberately indifferent to or tacitly authorized, the unconstitutional acts"); *Mayorga v. Missouri,* 442 F.3d 1128, 1132 (8th Cir. 2006) (to establish supervisory liability, prisoner must allege "specific facts of

personal involvement in, or direct responsibility for, a deprivation of his constitutional rights"); *Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) (holding that "[i]t is well settled that *respondeat superior* is not a basis for liability" under § 1983; and the "general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support [§ 1983] liability").

Finally, even if Page or any other Defendant was aware of the allegedly unconstitutional conditions, there is no evidence of "deliberate indifference." FCDC officials provided Foster with a floor mattress; they ensured that all areas of the FCDC were regularly cleaned and that detainees were provided cleaning supplies on a regular basis; they promptly responded to the October 16, 2017 flooding incident; they had the FCDC inspected for black mold; and they responded to Foster's written grievances. Foster has failed to come forward with any evidence demonstrating that Defendants' conduct amounted to "reckless disregard" of a known risk to Foster's health or safety.

Accordingly, because the undisputed facts demonstrate that Defendants did not violate Foster's constitutional rights, the Court concludes that they are entitled to summary judgment on all of Foster's claims against them.[7]

---

[7]Defendants have also raised the defense of qualified immunity. However, because the Court concludes that there is no evidence of a constitutional violation as to Foster's inhumane condition of confinement claims, there is no need to address qualified immunity as an alternative

## IV.  Conclusion

IT IS THEREFORE RECOMMENDED THAT Defendants' Motion for Summary Judgment (*Doc. 29*) be GRANTED, and that Foster's claims be dismissed, with prejudice.

DATED this 13th day of August, 2019.

_____

UNITED STATES MAGISTRATE JUDGE

---

reason for granting them summary judgment. *A.H. v. St. Louis County,* 891 F.3d 721, 726-27 (8th Cir. 2018) ("As we agree with the district court that Plaintiffs failed to prove a violation of Hartwig's Fourteenth Amendment rights, we need not address qualified immunity."); *Schmidt v. City of Bella Villa,* 557 F.3d 564, 574 (8th Cir. 2009) ("Since we find no constitutional violation, we need not address the issue of qualified immunity.").